132    APPELLATE COURTS OF ILLINOIS.

Scheldt v. Equitable Life Assur. Soc. of the U. S., 208 Ill. App. 132.

## Philip H. Scheldt, by J. T. Scheldt, Plaintiff in Error, v. Equitable Life Assurance Society of the United States, Defendant in Error.

### Gen. No. 22,427.

1. INSURANCE, § 115*—*when agreement construed as unconsummated and in anticipation of future application for insurance.* Provisions of an insurance agreement construed as an unconsummated agreement for the payment of moneys to an insurer in anticipation of an application for insurance at some future date by which neither party is bound, but which merely sets forth the terms upon which the insurer proposes to become liable if it so elects.

2. PAYMENT, § 39*—*when may be recovered.* One for whose use moneys are paid to an insurance company in anticipation of an application for insurance at some future time under an unconsummated agreement by which the insurer incurs no liability may, upon his election not to consummate the contract, recover from the insurer the moneys so paid it.

Error to the Municipal Court of Chicago; the Hon. JOHN J. ROONEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1916. Reversed and judgment here. Opinion filed October 31, 1917.

HARRY A. BIOSSAT, for plaintiff in error.

MAYER, MEYER, AUSTRIAN & PLATT, for defendant in error.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Philip H. Scheldt, a minor, by his next friend, brought suit against the Equitable Life Assurance Society of the United States to recover $450.63. The case was tried before the court without a jury. The court found in favor of the plaintiff and entered judgment in his favor for $288. Plaintiff, being dissatisfied, prosecutes this writ of error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

The record discloses that December 13, 1904, the defendant issued to the plaintiff its 20-year endowment policy of insurance for $1,000, pursuant to an application made by his father, plaintiff at that time being a school boy 10 years old. The annual premium was $50.07. After the father of plaintiff had paid 9 premiums amounting to $450.63, he wrote the insurance company stating that he did not care to longer continue the policy and demanded the return of his money with 3 per cent. interest, which the company refused but stated it was willing to pay him $288, the surrender value of the policy.

The policy provides, *inter alia,* that defendant assured the life of plaintiff for $1,000, which, on satisfactory proofs of the death, it agreed to pay to plaintiff's father, if living, and, if not, then to plaintiff's representatives. The payment was to be made subject to certain conditions. Clause 7 of the policy provides:

"After this policy has been in force three years the Society will make loans thereon at five per cent. interest per annum, payable in advance, of the respective amounts stated in the following table, upon the due assignment of this policy to the Society as collateral security for such loan.

"This policy shall lapse and together with all premiums paid thereon shall forfeit to the Society on the nonpayment of any premium when due, except that provided premiums shall have been paid for one of the periods respectively mentioned in the following table, there will be granted, without action on the part of the assured, a Paid-up Endowment for the amount fixed in said table; or in lieu thereof at the option of the assured (1), the cash value fixed in said table will be paid to said Assured upon the due surrender of this policy to the Society at its Home Office in New York City at any time after its termination; or (2) (provided this policy is surrendered within the days of grace, or, with satisfactory evidence of good health, within one year thereafter) a paid-up term policy for the full amount assured under this policy, and if

the Assured is living at the expiration of said term policy, the pure endowment indicated in the table will be paid in cash to said assured. The paid-up assurance, cash value and paid-up term policy referred to herein are based on the number of full years' premiums that have been paid, are granted without participation in profits, and are subject to reduction for any indebtedness to the Society under this contract.''

The table attached showed the surrender value of a policy of $1,000 at the end of each year beginning the third year and ending the twentieth year. At the end of 3 years the surrender value was $66; 4 years, $102; 9 years, $288, and the surrender value increased each year to $1,000 at the end of the 20 years. The policy also contained the following condition:

''It is hereby understood and agreed that the assurance under this policy shall take effect only upon the receipt by the Society of evidence of good health of the Assured satisfactory to the Society after attaining fifteen years of age and of the then acceptable character of the risk, and the endorsement of this policy accordingly. Should the Assured die prior to such endorsement, provided this policy is then in force, the Society's liability shall be limited to the return, without interest, of all premiums received hereunder; and in the event of a lapse of this policy prior to said endorsement, the provisions for extended assurance, or all assurance against death in excess of the amount of premiums received, shall be of no effect. In the event of this contract being continued to the end of the Accumulation Period without such endorsement, the policy must then be surrendered for its full cash value, including its full share of surplus apportioned.''

Plaintiff contends that, under the policy, ''there never was any valid contract of insurance consummated between the parties, and the defendant is liable as for moneys had and received in the amount of the premiums paid.'' On the other hand, the defendant contends that the policy was in full force and effect from the date of its issuance, but that the ''assur-

ance'' did not become effective, unless and until the risk was accepted and the indorsement made on the policy after the plaintiff had attained 15 years of age as provided in the condition above quoted; that as such indorsement was not made and plaintiff had never shown that he was in good health after attaining the age of 15 years, then he was entitled under clause 7 to $288, the surrender value of the policy. This seems to be the view adopted by the trial court. .

We are unable to agree with the contention of either party. We are clearly of the opinion that the policy was in force and effect from the date of its issuance. If as the defendant contends the ''assurance'' under the policy did not become effective for the reason that plaintiff, after he became 15 years of age, furnished no evidence that he was in good health, then the defendant would not be liable to pay the $288, or any other sum mentioned in clause 7, for this is manifestly a part of the assurance. We think that clause 7 does not apply until the assured has attained the age of 15 years and had the policy indorsed as provided for in the condition quoted, and that until such indorsement is made the rights of the assured are fixed by the condition itself. The condition defines the rights of the parties in case the policy lapses without the indorsement of the evidence of the assured's good health, as follows: ''and in the event of a lapse of this policy prior to said endorsement, the provisions for extended assurance, or all assurance against death in excess of the amount of premiums received, shall be of no effect.'' When this provision is read with attention, we think the true meaning of it is that, where the policy lapses and the indorsement has not been made, the defendant's liability is limited to the amount of the premiums paid.

A careful perusal of the document in question discloses that while it is in the form of an insurance policy, the condition nullified all the provisions in

regard to insurance; in short, it gave no insurance protection of any kind, and by its terms subjected the defendant to no liability. It proposed that the minor should pay, and the comp ny should receive, certain sums of money at stated ti es, and that if application should be made to the society for insurance after the minor became 15 years of age, the society would then decide whether or not it chose to enter into a contract of insurance. The society was not obliged to enter into any contract of insurance unless it chose to do so. It also appears that in no clause in the policy does the insurance company assume any obligation of any kind. It is contended on behalf of defendant that it did, by clause 7, undertake to loan or repay certain amounts to the insured upon the surrender of the policy, but we are of the opinion that the clause had no such effect, for it places no obligation upon the defendant until "after this policy has been in force three years." In addition to this, the provisions of the clause itself demonstrate that they are intended to apply only to cases where a person has had the benefit of the insurance. The table clearly shows that the purpose is to permit the company to retain enough of the premiums paid to cover the value or costs of the insurance given, and to return to the insured the investment value of the premiums over and above the cost or value of the insurance. Such provisions admittedly have no application to a case where the society has incurred no liability and afforded no insurance protection.

The case, then, resolves itself into one where moneys have been paid to an insurance company in anticipation of an application for insurance at some future time, and where the company incurs no liability, but merely states the terms upon which it proposes to become liable if it elects to do so. It is not a consummated agreement, and as one party is not bound, neither is bound. The defendant company is in re-

ceipt of $450.63, which sum was paid to it for the use and benefit of the plaintiff, a minor. The defendant assumed no obligation to the plaintiff, afforded him no insurance, and upon his election not to consummate the contract, is liable to him as for money had and received to his use. It follows therefore that the plaintiff is entitled to recover the amount of the premiums paid, $450.63.

The judgment of the Municipal Court of Chicago is reversed and judgment will be entered in this court in favor of the plaintiff and against the defendant for $450.63.

*Judgment reversed and judgment in this court.*